## MASTERSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10659.

Circuit Court of Appeals, Fifth Circuit.

March 3, 1944.

See also 127 F.2d 252; 128 F.2d 526.

Harry C. Weeks, of Fort Worth, Tex., and H. L. Adkins and Chas. H. Keffer, both of Amarillo, Tex., for petitioner.

Warren F. Wattles, Sewall Key, Helen R. Carloss, and Newton K. Fox, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Ralph F. Staubly, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

While it presents more than one facet, the ultimate question here presented is whether petitioner was taxable in 1935, the tax year in question, on all the income of the R. B. Masterson Estate, being administered by her as independent executrix, or only the part of it which was in that year paid over to her or expended for her use and benefit. The commissioner decided that all of it was taxable to her, the Tax Court affirmed, and she is here seeking a reversal of that decision.

This is the record: In 1935, the tax year in question, petitioner, as independent executrix of the estate of R. B. Masterson, deceased, was the active administrator of its property. In that year she filed an individual return in which she included as her income all of the amounts physically received by her personally from the estate and all of the amounts the estate actually expended in her personal behalf during that year. As executrix, she also filed a return, in which she reported as the income of the R. B. Masterson Estate, the balance of the income from the estate property not physically and personally received by her or actually expended in her behalf. The commissioner, determining that the income returned by and for the estate was her personal income and should have been returned by and for her personally, determined a deficiency accordingly.

In her petition to the Tax Court, the taxpayer assigned, among other errors, "(b) The respondent erred in holding and determining that petitioner individually was taxable upon the entire net income of the estate of R. B. Masterson, deceased, of which she was independent executrix, or that she was taxable upon more than the amount of said income expended for her support and maintenance".

The Tax Court ignored the fact stipulated and shown of record that the Masterson estate was in process of administration and that only the income turned over to, or expended on, Mrs. Masterson's behalf was received by her individually, and its corollary that she was taxable only as to the income so received.[1] The Tax Court concerned itself instead with determining who would ultimately own the income. It decided that Mrs. Masterson was the ultimate owner of the income received by the estate for that year and not, as she had contended, of only that part of it which the estate paid over to her in that year or used for her benefit, and that all of the income should be taxed to her. Basing its decision that she was such owner on its holding that the judgment of this court,[2] that Mrs. Masterson was the owner of a conventional life estate, was res adjudicata of the question whether she owned the income from it, it rejected petitioner's contention that the rights of those named in the will were controlled and determined by the judgment of the state court which she had pleaded and proved.[3]

While petitioner does assign this ruling as error, she presents as the primary question for decision here, "Should petitioner have reported as her own all income received in 1935 by the estate of R. B. Masterson, deceased, rather than the proportion of this income distributed to her in that year".

We think it quite clear that the Tax Court erred in ignoring and refusing to give effect to the undisputed fact that the estate was in the process of administration, and thus erroneously determined that not only the income of the estate distributed to petitioner, but that undistributed, was taxable to her. It is undisputed: that petitioner and her husband executed a joint will; that that will was probated August 17, 1931; that Mrs. Masterson qualified as independent executrix under it; and that in 1935, as executrix, she was duly administering the estate which by virtue of the terms of the will and her election consisted of all the property which had belonged to her and her husband in community at the date of his death; that on August 19, 1935, petitioner, in accordance with the will, relinquished and transferred to the six children of R. B. Masterson a one-half interest in all the property of the estate, and since the conveyance and relinquishment she has continued to administer on the remainder of the estate as independent executrix.

For the calendar year 1935 she filed two returns, one for herself as an individual, and one for the Masterson estate. The income reported by her included all the amounts physically received by her from the Masterson estate and all amounts actually expended in her behalf by the estate during that year. The return filed for the estate showed a net income of $25,469.-09, and this amount represented the net balance of income from the estate's properties not physically received by petitioner or actually expended in her behalf. Under these circumstances, the income reported by her was her income; that reported by the estate was income of the estate, reportable by it and not by petitioner. Barbour v. Commissioner, 5 Cir., 89 F.2d 474; Commissioner v. Larson, 9 Cir., 131 F.2d 85. Because the income assessed to her was not her income but that of the estate, the deficiency was incorrectly determined, and the decision affirming that determination was wrong and must be reversed.

It was wrong, too, in its holding that, despite the facts that the suit and judgment in the state court, which finally and conclusively settled the ownership of these funds, were for the first time, in this suit, pleaded and proved in the federal court, the

---

[1] Secs. 161, 162, Rev.Act 1934, 26 U.S.C.A. Int.Rev.Code, §§ 161, 162.

[2] Masterson v. Commissioner, 5 Cir., 127 F.2d 252.

[3] She pleaded and offered in evidence the proceedings and judgment in cause No. 15,826 on the docket of the 108th District Court of Potter County, Texas, in a suit she brought, individually and as independent executrix of the Masterson estate, in the early part of 1941, (after the Tax Court's decision had been finally entered in the gift tax case and before the decision in the Circuit Court of Appeals in Masterson v. Commissioner, supra, affirming that decision), against all the other persons interested in the estate. This judgment, among other things, adjudicated that petitioner did not take individually a conventional life estate but only a right to be supported and maintained therefrom, and that the revenues, which accumulated from the estate and which had not been expended in caring for the estate and in supporting and maintaining petitioner, did not belong to her individually but fell into and remained a part of the estate in her hands to go ultimately to the six children named in the will.

judgment in the gift tax suit was res adjudicata in this suit. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, is to the contrary.

The Tax Court's view that this case is different from Blair's case was based upon the erroneous assumption that this court decided the gift tax case as though the proceedings in the state court case were before it. These proceedings were not before us; they were expressly excluded from our consideration. We said [127 F.2d 256], "The motion to enlarge the record so as to include proceedings in the Texas State Court is denied, and those proceedings are not before us as evidence. So far as the legal questions decided by the Texas State Court are concerned we take judicial knowledge of the decision. * * * We are not bound by that decision, and to the extent that it differs from what we have said we do not agree with it". All that we decided was that, treating the decision, as distinguished from the judgment, as a statement of the law of Texas, we did not agree with it. We did not say that we would not give effect to the judgment against the taxpayer. We said only that, treating the suit as ending in a judgment determining the title as between petitioner and the other persons claiming interests, the matter was not before us, and we could not give it effect.

The situation here then is in legal effect the same as it was in Blair's case. There the Federal Court made its first decision without having the State Court judgment before it. It made its second decision on a record in which the State Court proceedings appeared as pleaded and proved. Here, when the first decision was made, the record of the State Court proceedings was not before the court. When the second decision was made, they were. Res adjudicata is a principle of peace, and should be applied to bring litigation to an end where it is correct and just to do so.[4] It is without application here. The order appealed from is reversed, and the cause is remanded to the Tax Court with directions to redetermine the deficiency accordingly.

McCORD, Circuit Judge, concurs in the result.

HOLMES, Circuit Judge (dissenting).

Upon the issue presented, the majority opinion is now in accord with my dissent when the will and covenant were construed by this court in the gift-tax case;[1] and I regret that the principles applicable to the plea of res judicata compel me, with deference, to dissent again.

The fundamental error of the majority in our prior decision was in holding, contrary to the law of Texas, that the joint will took effect as a joint will prior to the death of the survivor. This ruling was contrary to the decision of Wyche v. Clapp, 43 Tex. 543, 548, 549, holding that from the very nature of the instrument a joint will could not take effect as a joint will while one of the parties survived.

Our prior decision dealt solely with gift taxes; the present controversy is one over income taxes. The surviving spouse has

---

[4] But it is of the essence of the defense that it must be pleaded and proved that the matters in issue are the same as those in the former suit, the judgment in which it relies on. Judicial notice cannot be taken that they are. 20 Am.Jur., p. 102, "Evidence", par. 83.

"It is generally held that the existence and contents of a judgment sought to be made available as a basis for the application of the doctrine of res adjudicata must be proved by offering the record or a copy thereof in evidence, whether the judgment was rendered by the court trying the principal case, or by another court." 30 Am.Jur., p. 993, Title "Judgments", Par. 273.

Divide Creek v. Hollingsworth, 10 Cir., 72 F.2d 859, 96 A.L.R. 937. Bennett v. Commissioner, 5 Cir., 113 F.2d 837, 130 A.L.R. 369, decided by this court, is not at all to the contrary.

[1] "I agree with the taxpayer's contention as to the character of the life interest that she took under the will of her husband in the portion of the community owned by him at the time of his death. She did not take a conventional life estate, but only an estate that gave her the right to support and maintenance for life. As under the covenant the entire community was to be kept intact during the life of the survivor, she could, if necessary, draw upon either income or corpus of the joint estate for her reasonable support and maintenance. The portion of the income from the joint estate that she did not need and failed to use did not accrue to her free from the provisions of the joint will and covenant, but accrued to the joint estate, which was to remain intact, subject to the provisions of that instrument." Dissenting opinion, 128 F. 2d 527.

given away her entire interest in the community estate, and is now administering upon the estate of her deceased husband. Her will is irrevocable but it has never taken effect, because she is still alive. She is, therefore, acting as the executrix of the separate will of her husband.

The point before us now is whether Mrs. Masterson has a conventional life interest in her husband's estate, or only the right to support and maintenance therefrom. In the gift-tax case,[2] this court held that she had a conventional life interest, and gift taxes were assessed on its accumulations from the death of her husband until the date of the gift. At the same time, this court held that she owed no gift taxes on the corpus of her community interest, which she had given to the children, because she had not only ratified the joint will and covenant (made under coverture) but had "waived" her community rights and "abandoned" her title to half of the joint estate by probating said will as the separate will of her husband. If the State Supreme Court ever holds that a joint will takes effect as a joint will upon the death of the one dying first, I dare say there will be no more joint wills made in Texas. This court is now holding, in a controversy over income taxes for the year 1935—the same year in which the gift instrument was executed[3]—that Mrs. Masterson does not have a conventional life interest, but only the right to support and maintenance. This ruling is in accord with a decision of one of the lower Texas courts in an inter-family suit for construction of the joint will and covenant while the gift-tax controversy was pending. The United States was not a party to that suit, and could not have been made a party. The reason given for the majority's change of ruling is that the record of the state court proceedings was not before it in the gift-tax case.

Let us analyze this premise: In the prior suit in this court, there was a motion to enlarge the record so as to include said proceedings in the state court. The motion was denied for reasons that the majority deemed sufficient, it being stated in the opinion overruling the motion that the court would take judicial knowledge of the legal questions decided therein. Now the majority says that "treating the decision, as distinguished from the judgment, as a statement of the law of Texas, we did not agree with it." This is a distinction without a difference for our present purpose, which is to ascertain the rights of the surviving spouse under the will of the deceased during the year 1935. This court held that on August 19, 1935, she was vested with a conventional life estate, and assessed federal gift taxes on the accumulations from said estate. It now holds, for income-tax purposes, that she had the right only to support and maintenance from said estate at that time.

The majority says that, because it excluded as evidence the record of a decision of which it took judicial knowledge, a plea of res judicata does not lie. It misapprehends the nature of the defense interposed. There is no plea that the judgment in the state court is res judicata. The plea of res judicata is based upon the allegation that the prior federal decision was between the same parties and determined the exact issue that is now before the court. There is no new situation, no change of years, no intervening state decision, as in Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L. Ed. 465. The record in the state court was offered in evidence in the prior case, not to support a plea of res judicata, but to advise the court of the rights of the parties under local law so that it might exercise an informed judicial knowledge. In refusing to admit the record, the court said that, so far as the legal questions are concerned, "we take judicial knowledge of the decision. * * * We are not bound by that decision, and to the extent that it differs from what we have said we do not agree with it." [127 F.2d 256.] This was no more than if counsel had offered to read the opinion in Wyche v. Clapp, supra, and the court had said: "We don't want to hear it, we know what it holds, and we don't agree with it." The majority did follow the state decision in part, and I agree that, as to federal tax liabilities incurred prior to the inter-family suit, this court was not bound by the judgment therein because, being the decision of a lower court, it was not controlling to the extent that it conflicted with the decision of the Supreme Court of Texas in Wyche v. Clapp, supra.

This case is illustrative of the complications that may flow from error. The initial

2 Commissioner of Internal Revenue v. Masterson, 5 Cir., 127 F.2d 252; Id., 5 Cir., 128 F.2d 526.

3 The date of the gift instrument was Aug. 19, 1935.

question was the proper construction of a joint will and covenant. As a result of the holding that the instrument took effect as a joint will before the death of the survivor, we have seen a living woman acting as executrix of her own estate without paying estate taxes thereon.[4] Then she has given away her community interest in an estate worth over a million dollars without the payment of gift taxes on the corpus thereof, the gift taxes being assessed upon accumulations therefrom upon the theory that she was a conventional life tenant. Now she is relieved of income taxes upon the theory that she had the right only to support and maintenance in the very year that the gift taxes were imposed. All this cannot be right. The Tax Court cut the Gordian knot in an opinion well worth reading. Parts of it are quoted in a note.[5]

As to the other point on which the majority rests its decision in this case, I think we are bound by the finding of the Tax Court. Petitioner was an independent executrix, under no duty to account to any court. Assuming that she was also a life tenant, she should be charged with the entire income that came into her possession as life tenant, less proper deductions. The fact that she commingled her funds as life tenant with those of the estate did not relieve her of reporting individually all amounts received as life tenant. The executrix and the life tenant were one and the same person. This is a matter of tax administration, as to which we are bound by the findings of the Tax Court.[6] This court cannot say, as a matter of law, that the income due the life tenant was not received by her as such.[7]

---

[4] I do not mean to imply that this would not have been a strange sight if she had paid estate taxes on her half interest.

[5] "In the present case, the issue is whether the decision of the Circuit Court of Appeals for the Fifth Circuit in a proceeding in which these parties litigated the same question is conclusive; and in disposing of that question we can not resort to the concept of a changed situation. Here the Texas Court's decision did not follow but preceded the previous adjudication. By taking judicial notice of that decision the Appellate Court had before it the action taken by the state court to precisely the same extent as if it had been introduced in evidence. Lamar v. Micou, 114 U.S. 218 [5 S.Ct. 857, 29 L.Ed. 94]; see Oetjen v. Central Leather Co., 246 U.S. 297, 301 [38 S.Ct. 309, 62 L.Ed. 726]. There is no more than that before us here.

"Nor is the adjudication by the Circuit Court of Appeals any the less conclusive because it may be said that the issue it decided was partly one of law. The binding effect of an application of the principle of res judicata is as inescapable in the one case as in the other. '* * * a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit by the same parties or their privies.' Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 48 [18 S. Ct. 18, 42 L.Ed. 355]. The disposition of the issue is what is conclusive and it follows that whatever was involved in the question originally decided as to both fact and law is subsequently binding. [See Bissell v. Spring Valley Township, 124 U.S. 225, 231, 232, 236, 8 S.Ct. 495, 31 L.Ed. 411; City of New Orleans v. Citizens Bank, 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202; Northern Pacific Railway Co. v. Slaght, 205 U.S. 122, 131, 27 S.Ct. 442, 51 L.Ed. 738; Passailaigue v. Herron, 5 Cir., 38 F.2d 775, 776; 46 Yale Law Journal, p. 1320.]

"Nor would it be of any consequence, if this can be suggested without presumption, whether the decision in the prior proceeding were completely erroneous. The function of res judicata is to make it unnecessary that the correctness of the former adjudication be reexamined. If it were only prior decisions with which the subsequent triers of the question could independently agree, to which the rule applied, there would be no need for or benefit from the rule. It is for that reason at least that the former decision is said to make white black, black white, the crooked straight, the straight crooked. Jeter v. Hewitt, 22 How. 352, 364 [16 L.Ed. 345]. 'Matters once determined in a Court of competent jurisdiction may never again be called in question by parties or privies against objection, though the judgment may have been erroneous and liable to, and certain of, reversal in a higher court.' [City of] New Orleans v. Citizens Bank, supra [167 U.S.] 398 [17 S.Ct. 905, 42 L.Ed. 202]." [1 T.C. 315.]

[6] Dobson v. Commissioner, 64 S.Ct. 239.

[7] Opinion on Petition for Rehearing in Dobson v. Commissioner, 64 S.Ct. 495.